## TOWER v. BLESSING.

(Supreme Court, Appellate Division, Third Department.  November 16, 1900.)

1. LANDLORD AND TENANT—LEASE—CONTRACT—RENT—COUNTERCLAIM.

Plaintiff leased certain premises to defendant, who was to make all the necessary repairs to the house situated thereon at his own expense.  On defendant's complaining of the condition of the house, plaintiff said that he would enlarge and rebuild it if it was satisfactory to defendant and the latter would let him occupy part of it free of charge during the summer, and that he would buy produce from defendant, and thereby afford him an easy way to pay the rent.  The house was rebuilt, and defendant was saved the cost of repairs, occupied more and better rooms than he was entitled to under the lease, and plaintiff took the produce as promised, defendant never demanding any rent.  *Held* that, as the circumstances showed that there was no expectation that plaintiff should pay any rent for the rooms he occupied, a contract to do so would not be implied, and hence an amount charged as rent cannot be set up by defendant as a counterclaim in an action by plaintiff to recover the rent for the premises.

2. SAME.

Where a written lease provides that the lessee will seed a certain amount of the premises with timothy and a certain amount with rye, and that at the expiration or cancellation of such lease he shall be paid for preparing the land and for the rye sown that has not been harvested, such lessee cannot recover for seeding with timothy.

3. WITNESSES—EVIDENCE—ADMISSIBILITY.

Plaintiff leased certain premises to defendant, who obligated himself in the lease to sow a certain portion of the premises with timothy.  In an action for rent defendant set up an amount for sowing such timothy as a counterclaim, and, though objections were made, he was permitted to testify as to the worth of such sowing.  *Held*, that the admission of his evidence was erroneous and prejudicial.

Appeal from Albany county court.

Action by Franklin D. Tower against Edward McC. Blessing. From a judgment of the county court affirming a judgment of the city court of Albany in favor of the defendant, plaintiff appeals.  Reversed.

Appeal by the plaintiff from a judgment of the county court of Albany county, entered in the clerk's office of that county on March 20, 1900, affirming a judgment of the city court of Albany entered upon the verdict of a jury in favor of the defendant.  On February 10, 1893, the plaintiff leased his farm in Albany county to the defendant for five years from April 1, 1893, at the yearly rental of $400, payable semiannually.  It was a written lease. The defendant continued in occupation one year after the expiration of his lease, from April 1, 1898, to 1899, and to recover for the rent of that year this action was brought in the city court of Albany.  The answer does not deny any of the allegations of the plaintiff's cause of action, but sets up eight distinct counterclaims against the plaintiff, amounting to $826.50, on six of which, amounting to $676, the jury found for the defendant, and rendered a verdict for the same in his favor, less the amount of rent, with interest, and the county court, on appeal, affirmed the judgment entered on this verdict. One of these counterclaims allowed by the jury was for $250 for the use and occupation by the plaintiff of a part of the house on the farm during the summers of 1894, 1895, 1896, 1897, and 1898, five years, at $50 per year. When the plaintiff leased the farm to the defendant there was upon it an old house, and in the lease the defendant agreed to do all necessary repairs at his own cost and expense.  In December, 1893, the plaintiff, with the defendant's consent, began the erection of a substantially new house upon the premises, which was completed in the following spring; and in the five following summers the plaintiff, with his family, lived in a part of the house,

and, except the last year, purchased of the defendant the farm produce needed for his family. The old house consisted of about 8 rooms, and the new one of 23 rooms, 9 of which were occupied by the defendant and his family. The plaintiff expended upon the new house about $5,000, and the residence of the defendant was much improved. There was no express agreement of the plaintiff to pay rent for the part of the house occupied by him in the summer, and in the yearly settlements between the plaintiff and the defendant there was no claim made by the defendant for such rent.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

S. T. Hull, for appellant.

N. T. Towner, for respondent.

EDWARDS, J. Although it is not difficult to see how the county court, upon a review of the evidence relating to the defendant's counterclaims allowed by the jury, might have arrived at a conclusion different from that reached by the jury, yet, with the exception of the one for use and occupation, we cannot say that there is no evidence to support them; and, if there was such evidence, it was not permissible for the county court to reverse the judgment as against the weight of evidence. Ludlum v. Couch, 10 App. Div. 604, 42 N. Y. Supp. 370; Clark v. Daniels, 29 App. Div. 600, 51 N. Y. Supp. 177; Northridge v. Astarita, 47 App. Div. 486, 62 N. Y. Supp. 441. Since the decision of the county court, section 3063, Code Civ. Proc., relating to appeals from justices' courts, has been amended so that the county court may reverse the judgment where it is "contrary to or against the weight of evidence," and, if an appeal should be taken from any judgment rendered in favor of the defendant on his counterclaims on a new trial, the county court will be at liberty to exercise its enlarged powers. A careful examination of the record does not disclose any evidence to support the defendant's counterclaim for use and occupation by the plaintiff of a part of the house on the leased premises. There was, concededly, no express agreement by the plaintiff to pay rent, and, "where the use and occupation of real estate is under such circumstances as to show that there was no expectation of rent by either party, a contract to pay rent will not be implied." Collyer v. Collyer, 113 N. Y. 442, 21 N. E. 114. There is no proof that at any time during the occupation by the plaintiff of a part of the house he ever expected to pay, or that the defendant expected to receive, rent for the part so occupied; and the circumstances irresistibly lead to the conclusion that the contrary of this was the intention and expectation of the parties. The defendant's testimony is that in the fall of 1893—the first year of his occupation of the farm under the lease of the plaintiff—the plaintiff went to the farm with an architect, and said he was going to change the house, and asked the defendant if he could fix the house, and the defendant said yes. The plaintiff said, "if he fixed the house, he would fix it large enough for him to come out there and live in the summer four months; if he would fix the house, he would come out there to live in the summer himself." He asked the defendant if he had any objections. The defendant said, "No; no objections to him living there." The defendant says he did not have any talk with

plaintiff about the plans until after the contractor and builder brought them out there; that before he leased the property the plaintiff told him "that he would not put any repairs on that old house," and that he never had any talk with plaintiff about making improvements until he came out there with the architect; that when the plaintiff came there with the architect he asked the defendant if he had any objections to improving the property, and defendant told him no; that when the plans were made, and the house commenced, he knew the plaintiff was going to live there with his family and the defendant with his; that the defendant was to use part of the house and the plaintiff was to use part of the house. He says that while the house was being built he suggested to the plaintiff certain changes which he wished made in the plans of the part to be occupied by the defendant, and the plaintiff adopted his suggestions. The defendant further says that during the time he lived on the farm he rendered bills to the plaintiff once or twice a year, except during one year, and they would strike a balance, and, if the account was in plaintiff's favor, he paid him; that their last settlement was in January, 1898, when they balanced their books; that the plaintiff and defendant brought in their books, and struck a balance, and the defendant then gave to the plaintiff a receipt, which reads as follows:

"Jany. 13, 1898.

"Received of F. D. Tower six hundred fifty-two & $^{40}/_{100}$ dollars, in full for all demands to date.

"$652.40.                              Edward McC. Blessing."

He says that at the time of this settlement he had his books there, and he went over the items of his account and the items of the plaintiff's account. The account of $652.40, for which defendant gave a receipt to the plaintiff, consists mainly of items of farm produce which the plaintiff had purchased of the defendant; and in the account there is no charge for the use and occupation by plaintiff of the part of the house, although the plaintiff had then used the part of the house four summers, for which use the defendant now claims $50 a year. He further says that in 1896, two or three summers after plaintiff had occupied a part of the house, he borrowed $100 of the plaintiff. After the close of the defendant's testimony, the plaintiff, in his own behalf, testified that in the middle of the summer of 1893 the defendant made complaints about the old house, and asked him to make repairs, and plaintiff told him that he would come out there, and look it over; that he did so, returned to Albany, talked with an architect, with whom he afterwards went out there, showed the defendant the plan submitted by the architect, and says:

"I told him these plans would call for a large expenditure of money, and it couldn't be expected that any man would expend that amount of money without deriving any benefit. I told him, if the plans were satisfactory to him, and if it was satisfactory to him, I should build the house, and come out and occupy a portion of it. I would get estimates, and, if it was a reasonable amount, I would build the house. He said he would be very glad to have me build a house in that way. I told him, if we came out there, my family would use more or less produce of his farm, and it would afford an easy way for him to pay the rent. He said he would be very glad to have me build a house, and make that arrangement to come out there."

He says that when he got the lowest estimate, which was about $5,000, he asked the defendant if the plan of that portion of the house that he was to occupy was satisfactory, and the defendant said it was. He says:

"I told him I would go on and build that house provided he would let me occupy that portion of it, together with the grounds around it and leading to it, free of charge. He said he would be very glad to make that arrangement."

After this testimony by the plaintiff, the defendant was recalled to the stand in his own behalf, and did not contradict any part of it. It is true that, before the plaintiff had testified, the defendant, when on the stand, had been asked by a juror the question: "Was there any understanding between you and Mr. Tower that you should do this work, and give him the use of part of the grounds, etc., because of the improved condition of your house, and that you were to do a certain amount of work, which you have testified you done, because he improved your house,—was there such an understanding?" To which the defendant answered, "No, sir." This was at most but a conclusion of the witness as to what the "understanding" was, and is not a contradiction of the statement thereafter made by the plaintiff, when on the stand, detailing the conversation between him and the defendant in respect to the occupation of a part of the house.

From the evidence in this case the conclusion is irresistible that there was no expectation upon the part of the plaintiff to pay, or of the defendant to receive, rent for the part of the house occupied by the plaintiff. The defendant occupied more and better rooms than he was entitled to under the terms of the lease; was saved the expense of repairs; the additional rooms built by the plaintiff and occupied by himself and family during the summer were a benefit to the defendant, who sold to the plaintiff's family produce needed by the family, and enabled the defendant in this way, to a considerable extent, at least, to pay his rent; and there can be no doubt that the occupation by the plaintiff was upon the understanding that this, together with the improved condition of the defendant's house, would be to the defendant an ample remuneration.

The appellant contends that evidence was improperly admitted by the trial court, against his objections and exceptions, relating to the defendant's counterclaim of $200 for seeding with timothy and sowing at least 50 bushels of rye upon between 25 and 30 acres of land on the leased premises in the fall of 1898, under the terms of the lease. The written lease between the parties provides:

"That he [the lessee] will seed with timothy each year at least twenty-five acres of sown rye, the same to be seeded with clover the following spring, and at the expiration or cancellation of this lease the party of the second part [the lessee] shall be paid for preparing the land and the rye sown that has not been harvested."

Under this provision the obligation of the plaintiff was to pay the defendant "for preparing the land and the rye sown that has not been harvested" on the expiration of the lease, the value of which was claimed by the plaintiff to be $100. In the defendant's bill of particulars he claims $200 for "preparing between twenty-five and

thirty acres of land by seeding with timothy and sowing at least fifty bushels of rye." For the "seeding with timothy" the plaintiff was under no obligation to pay the defendant. On the trial the defendant was asked by his counsel this question: "What, at that time, or this spring, would it be worth—what would you have to pay, the reasonable worth—to sow this twenty-five acres with fifty bushels of rye and seed with timothy?" This was objected to by the plaintiff on the ground, among others, that sowing with timothy was a part of the defendant's obligation under the lease. The objection was overruled, the plaintiff excepted, and the witness answered "$200." This evidence was upon a material and disputed question, was prejudicial to the plaintiff, and its admission was clearly erroneous. Our attention has been called by the appellant's counsel to the admission and rejection of other evidence by the trial court which is claimed to be erroneous, the consideration of which is here unnecessary, as we are of opinion that, for the reasons herein already stated, the judgment should be reversed, and a new trial granted.

Judgment reversed, and a new trial granted, with costs of the appeal to abide the event. All concur.

Judgments of the county court and city court of Albany reversed, with costs in both courts, and new trial granted in the city court of Albany. Order to be settled by EDWARDS, J.